IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRUCE SICKLES,

    Plaintiff,

v.                                                                            Civ. No. 01-1287  JP/DJS

CITY OF ALBUQUERQUE and
E.M. GRIEGO,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On August 29, 2002, Defendants filed a Motion for Summary Judgment (Doc. No. 25). In that motion Defendants argued that the malicious prosecution claim asserted in Plaintiff's complaint fails as a matter of law since Defendant Police Officer Griego had probable cause to file a criminal complaint against Plaintiff and Plaintiff failed to show a constitutional violation to support a 42 U.S.C. § 1983 suit.  Having reviewed the facts and the arguments of counsel, the Court concludes that Defendants' Motion for Summary Judgment should be granted.

*Undisputed Facts*

On May 6, 1999, Mary K. Connery went to the Albuquerque Police Department's (APD) Foothills substation to report that Plaintiff, Bruce Sickles, was harassing her.  Ms. Connery filled out an incident report and a three page statement alleging criminal harassment by Plaintiff.  Ms. Connery reported to APD that Plaintiff had surveilled her home, had followed her car, and had made numerous calls to her home without speaking on the telephone.  Ms. Connery provided APD with a copy of a letter that she wrote to the Associate Dean of the College of Education at

the University of New Mexico on April 11, 1999, which alleged other conduct on Plaintiff's part that Ms. Connery considered threatening.  After Ms. Connery filled out the incident report, Defendant Officer Griego interviewed Ms. Connery.  The next day, May 7, 1999, Ms. Connery supplemented her report with a dated chronology of the harassing events and the phone calls.

After Plaintiff became aware that Ms. Connery had filed a report of harassment with APD on May 6, 1999, Plaintiff called APD to refute the allegations.  Police Officers, other than Defendant Officer Griego, told Plaintiff that if he collected and submitted statements from witnesses that supported Plaintiff's assertion that Ms. Connery had mistakenly identified Plaintiff as the perpetrator, that information would be placed in the file along with incident report.  According to Plaintiff, these Officers told him that such documentation would prevent a criminal complaint from being filed.  Plaintiff provided APD with exculpatory statements and materials on June 3, 1999.  In those materials Plaintiff referred APD Officers to another report of harassment that Ms. Connery had filed with APD on May 21, 1999, which Plaintiff  successfully proved to be false.

There is no evidence that Defendant Officer Griego ever reviewed Plaintiff's alibi materials.  On August 5, 1999, Defendant Officer Griego filed a criminal complaint against Plaintiff based solely on her interview with Ms. Connery and the information that Ms. Connery provided to APD.  After receiving Defendant Griego's complaint the Albuquerque Metropolitan Court mailed a criminal summons to Plaintiff on August 10, 1999.  On November 15, 1999, the District Attorney's office filed a nolle prosequi in which the assistant District Attorney noted that there was insufficient evidence to prosecute Plaintiff.

*Legal Standard*

When a defendant has asserted a qualified immunity defense through a summary judgment motion the plaintiff must satisfy a "heavy two-part burden." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Ordinarily the "plaintiff must first establish that the defendant's actions violated a constitutional or statutory right. If the plaintiff establishes a violation of a constitutional or statutory right, he must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct." *Id*. (internal quotations and citations omitted). If the plaintiff does not "clearly demonstrate" that his or her "heavy two-part burden" has been satisfied, the defendant is entitled to qualified immunity. *Id*.

However when a § 1983 case is based on a claim of malicious prosecution, determining whether a plaintiff's federal rights were violated begins with an analysis of the common law elements of malicious prosecution. *Taylor v. Meacham*, 83 F.3d 1556, 1561 (10th Cir. 1996). Once a plaintiff has shown a claim for malicious prosecution under state tort law, the question then becomes whether plaintiff can demonstrate a violation of his Fourth Amendment rights. *Id*. (observing that § 1983 claims for malicious prosecution must demonstrate a Fourth Amendment violation, citing *Albright v. Oliver*, 510 U.S. 266, 274 (1994) (holding that pretrial deprivations of liberty are addressed by the Fourth Amendment) (Rehnquist, C.J., plurality opinion)).

*Analysis*

I.        Plaintiff's 42 U.S.C. § 1983 Claims

        A.        Defendant Officer Griego

Under the common law of New Mexico the elements for the tort of malicious prosecution are:

> (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages. In short, there must be both a misuse of the power of the judiciary by a litigant and a malicious motive.

*DeVaney v. Thriftway Marketing Corp.*, 1998-NMSC-001, ¶ 17, 124 N.M. 512, 953 P.2d 277. Defendant Officer Griego concedes that the first element of the tort is met. However, Defendant Officer Griego contends that no genuine issue of material fact exists for the remaining three elements.

In *DeVaney*, the Supreme Court of New Mexico "recognized that the filing of a complaint without probable cause" satisfied the second element of the tort. 1998-NMSC-001, ¶ 22. *DeVaney* defined "probable cause as the reasonable belief, founded on known facts established after a reasonable pre-filing investigation that a claim can be established to the satisfaction of a court or jury." *Id*. Probable cause is examined using an objective standard. *DeVaney*, 1998-NMSC-001, ¶ 22 n.2.[1]

---

[1] Although *DeVaney* did not address the issue, the objective standard employed by the New Mexico Supreme Court parallels the federal analysis of probable cause under 42 U.S.C. § 1983, in which Defendant Officer Griego's subjective belief concerning the probable cause standard is irrelevant. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (eliminating the subjective belief or intent of the law enforcement officer from the probable cause analysis).

Plaintiff argues that Defendant Officer Griego filed her criminal complaint without probable cause to do so. Plaintiff's contends that (1) "there were not known facts upon which a cautious and prudent person would believe that Bruce Sickles was guilty," and (2) "there was not a reasonable pre-filing investigation."  Doc. No. 29 at 9.

Whether probable cause existed in this case depends in part on what information is considered germane to the analysis, i.e., whether Plaintiff's alibi information should be considered. Plaintiff has failed to present evidence that Defendant Officer Griego knew or should have known that Plaintiff had filed exculpatory material with APD.  Defendant Officer Griego contends that (1) she did "not receive a copy of the Plaintiff's supplemental report," and (2) that there is no evidence that she ever reviewed Plaintiff's exculpatory evidence before drafting her criminal complaint against Plaintiff.  Doc. No. 26 at 2-3.  Faced with Officer Griego's qualified immunity defense, Plaintiff bears the burden of producing evidence to support his claim under § 1983.[2] *Medina*, 252 F.3d at 1128.  As Plaintiff has not offered evidence that Defendant Griego knew about Plaintiff's exculpatory evidence before swearing out a criminal complaint, the question of probable cause must be examined without reference to that information.

At the time Defendant Officer Griego filed the criminal complaint she knew that Ms. Connery had reported to APD that Plaintiff followed her car in an intimidating manner on April 9,

---

[2] Defendant Officer Griego emphasized in her reply brief that "Plaintiff failed to discuss the issue of qualified immunity in his Response."  Doc. No. 32 at 3.  Although the Court has analyzed Plaintiff's claims under the standard governing Defendant Officer Griego's qualified immunity defense, Plaintiff's decision not to brief the issue stands as an independent basis for granting summary judgment on Plaintiff's claims under 42 U.S.C. § 1983.  *Cf. Imperial v. Suburban Hosp. Ass'n, Inc.*, 37 F.3d 1026, 1031 (4th Cir. 1994) (holding that when a plaintiff fails to pursue a claim "in the face of a motion to dismiss the entire complaint which included that" claim, the claim has been abandoned).

5

1999.  According to Ms. Connery's APD report, Plaintiff tailed her car through traffic and pulled up close to her rear bumper when she stopped her car at a traffic light.  Then Plaintiff revved his engine as if he was going to hit her car with his.  Ms. Connery also had reported seeing Plaintiff sitting in a parked car across the street from her apartment on May 3, 1999.  As Ms. Connery drove away from her apartment, Plaintiff drove off.  During this same time frame Ms. Connery began receiving silent phone calls.  On approximately fifteen occasions from early April through early May of 1999 Ms. Connery would answer her phone but the caller would not speak to her.

    Ms. Connery explained to APD that Plaintiff had a motive to harass her.  She reported that Plaintiff had accused her of breaking up Plaintiff's marriage, and the harassment began just after Plaintiff's wife moved out of Plaintiff's house.  Doc. No. 26, Ex. B at 2.  Defendant Officer Griego testified that the timing of the events was critical to the probable cause analysis, because after Plaintiff's wife "moved out, within a week's time and since that date, [Ms. Connery] has been harassed by phone and vehicle and stalked."  Doc. No. 29, Ex. G (Dep. of E.M. Griego) at 36.  Viewed objectively, the totality of the circumstances presented to Defendant Officer Griego would have provided a reasonable officer with probable cause to believe Plaintiff was harassing Ms. Connery as that term is defined under state law.  NMSA 1978, § 30-3A-2 (1997) (making it illegal to engaged in "a pattern of conduct that is intended to annoy . . . another person and that serves no lawful purpose"); NMSA 1978, § 30-20-11 (1963) (making it illegal to disturb the quiet of any person "by repeated anonymous telephone calls").  Even if these facts fell short of probable cause, that deficiency was not objectively manifest to Defendant Officer Griego under the circumstances presented here.  *DeVaney*, 1998-NMSC-001, ¶ 22 (holding that the "lack of probable cause must be manifest").

Plaintiff argues that for Defendant Officer Griego to have conducted a reasonable pre-filing investigation she should have contacted Plaintiff, who would have successfully refuted Ms. Connery's allegations.  Plaintiff's argument stems from the fact that Plaintiff was contacted by another APD Officer who was investigating a second report of harassment that Ms. Connery had filed with APD on May 21, 1999.  In that case Plaintiff rebutted Ms. Connery's allegation to the satisfaction of the investigating officer and no criminal complaint was filed.  However, Plaintiff can point to no law or policy that required Defendant Officer Griego to contact Plaintiff before filing a criminal complaint.  This Court has considered and rejected the same argument in a criminal case.  *U.S. v. LaCock*, Cr. No. 00-552 JP, Doc. No. 52 at 10 (holding that the Fourth Amendment does not require a law enforcement officer to interview a suspect).  Here, as in *LaCock*, the argument that a reasonable investigation requires a law enforcement officer to interview a suspect before making a probable cause determination is without merit.  *Id.*

Defendant Officer Griego interviewed Ms. Connery, who claimed to have witnessed Plaintiff observing and following her on different days for no apparent reason.  Ms Connery's sightings of Plaintiff coincided with a series of silent phone calls to her home.  All of the harassing events occurred soon after Plaintiff's wife moved out, which Plaintiff blamed on Ms. Connery.  Additionally, Defendant Officer Griego knew that Ms. Connery had filed a formal incident report with APD.  Doc. No. 26, Ex. A.  Ms. Connery signed that report next to an acknowledgment that she understood that "it is a criminal offense to file a false report to police," and indicated that she would testify against Plaintiff should criminal charges be filed.  Doc. No. 26, Ex. A at 2.  Armed with an eyewitness who would testify against Plaintiff and who risked criminal prosecution for filing a false report and/or perjury, Defendant Officer Griego's pre-filing investigation was not

7

unreasonable as a matter of law. The fact that Ms. Connery may have been wrong cannot be imputed to Defendant Officer Griego.

Even if Defendant Officer Griego lacked probable cause to file a criminal complaint, Plaintiff still must show that Defendant Officer Griego had a primary motive to accomplish an illegitimate end. *DeVaney*, 1998-NMSC-001, ¶ 29. Under *DeVaney*, this element can be shown when a defendant "pursues a claim *knowing* it is meritless." 1998-NMSC-001, ¶ 30 (emphasis added). However, Plaintiff has not offered any evidence to suggest that Defendant Officer Griego *knew* that Ms. Connery's allegations were without merit. To the contrary, Defendant Officer Griego asserted at her deposition that she believed that there was probable cause to charge Plaintiff with harassment. Even if Defendant Officer Griego was mistaken on the issue of probable cause, her good-faith mistake does not translate into knowingly filing a meritless criminal complaint. *Anderson*, 483 U.S. at 638 ("We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable."); *Bober v. New Mexico State Fair*, 111 N.M. 644, 654, 808 P.2d 614, 624 (1991) (holding that NMSA 1978, § 41-4-12 waives sovereign immunity for intentional torts generally, and that "no case has held that simple negligence in the performance of a law enforcement officer's duty amounts to commission of one of the torts listed in the section").

Plaintiff has attempted to read the knowledge requirement out of the tort by citing an isolated passage from *DeVaney*, which states "an overt misuse of process, such as a lack of probable cause . . . may support an inference of an improper motive . . . ." However, this passage

does not permit a malicious prosecution claim when a law enforcement officer honestly but mistakenly believes that probable cause exists to file a criminal complaint. Under *DeVaney*, Plaintiff bears the burden of proving that Defendant Officer Griego "did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim." 1998-NMSC-001, ¶ 27. No such evidence was presented here. Hence, as a matter of state law a reasonable law enforcement officer's mistaken, but good-faith belief (like Defendant Officer Griego's) that probable cause existed simply does not satisfy the "purpose to accomplish an illegitimate end" element of the tort. *DeVaney*, 1998-NMSC-001, ¶ 29. That Defendant Officer Griego did not have an illegitimate end in mind is evident from Plaintiff's deposition, in which Plaintiff testified that he had no evidence that Defendant Officer Griego harbored an illegitimate motive or otherwise abused the judicial process. Doc. No. 26, Ex. G at 106.

Plaintiff has suggested that malice is relevant to the third element of the tort.[3] However, "[u]nder the requirement of a primary improper motive, it is insufficient that the [] defendant acted with ill will or spite." *DeVaney*, 1998-NMSC-001, ¶ 29. Since Plaintiff has offered no evidence that Defendant Officer Griego pursued the harassment charges knowing that they were meritless, Plaintiff cannot satisfy the third element of the tort of malicious prosecution under *DeVaney*.

Nor can Plaintiff demonstrate that his Fourth Amendment rights were violated. Under the facts known to Defendant Officer Griego there was probable cause to file a criminal complaint against Plaintiff. And even if there was an absence of probable cause, Defendant Officer Griego's

---

[3] Once again Plaintiff would have the Court impute malice to Defendant Office Griego even though Plaintiff testified at his deposition that he had no evidence that Defendant Officer Griego acted out of malice. Doc. No. 26, Ex. G at 110.

good-faith belief that probable cause existed is not actionable. *Anderson*, 483 U.S. at 641.
Because Plaintiff has not shown a actionable violation of his Fourth Amendment rights that was
clearly established at the time the criminal complaint was filed, Defendant Officer Griego is
entitled to summary judgment on the basis of qualified immunity.

    B.  City of Albuquerque

In his complaint Plaintiff contends that the violation of his Constitutional rights was
"caused, at least in part, by defendant City of Albuquerque's failure to properly train and
supervise co-defendant and its custom and policies which resulted in depravation [sic] of
Plaintiff's constitutional rights." Doc. No. 1, Ex. A at 3. Unlike natural persons, municipal
corporations cannot assert a defense of qualified immunity. *Camfield v. City of Oklahoma City*,
248 F.3d 1214, 1228 (10th Cir. 2001). However, "absent a constitutional violation by the
individual police officers whose conduct directly caused plaintiff's injuries, there can be no
municipal liability." *Trigalet v. City of Tulsa, Oklahoma*, 239 F.3d 1150, 1156 (10th Cir. 2001).
Under *Trigalet*, the City of Albuquerque cannot be liable to Plaintiff since Defendant Officer
Griego did not violate Plaintiff's Fourth Amendment rights.

II.  Plaintiff's Pendant State Law Claims

Plaintiff has asserted a claim under the New Mexico Tort Claims Act for malicious
prosecution.[4] As discussed above, Plaintiff has failed show the existence of a genuine issue of

---

[4] Under Section 41-4-12 of the Tort Claims Act, sovereign immunity is waived for "personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties."

material fact for the second and third elements of that tort under *DeVaney*. Hence, Defendants are entitled to summary judgment on Plaintiff's pendant state law claims. *Caillouette v. Hercules, Inc.*, 113 N.M. 492, 497 (Ct. App. 1992) (holding that negligent training or supervision of law enforcement officers is actionable only if there is a violation of rights specified in NMSA 1978, § 41-4-12, since "immunity is not waived for negligence standing alone").

On October 2, 2002, Plaintiff argued at the pre-trial conference that even if Defendant Officer Griego was not individually liable under *DeVaney,* the City would still be liable because Defendant Officer Griego filed her criminal complaint when other APD officers possessed information that proved his innocence. Plaintiff's theory that liability can lie directly with the City under the Tort Claims Act has been rejected by the New Mexico Supreme Court. *California First Bank v. State of New Mexico, et al.*, 111 N.M. 64, 68 & 71 n.3, 801 P.2d 646, 650 & 653 n.3 (1990) (holding that NMSA 1978, § 41-4-12 did not waive sovereign immunity for governmental entities because they are not "law enforcement officers" withing the meaning of the Tort Claims Act).

  IT IS THEREFORE ORDERED that:

(1)  Defendants' Motion for Summary Judgment (Doc. No. 25) is GRANTED, and all the claims asserted in Plaintiff's Complaint will be dismissed with prejudice; and

(2)  the other motions currently pending are moot.

                 */s/ James A. Parker*
                CHIEF UNITED STATES DISTRICT JUDGE